## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:14-CV-571-DCK

| | |
|---|---|
| DARLENE R. EVANS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF CHARLOTTE, )<br>)<br>Defendant. )<br>) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on "Defendant City Of Charlotte's Motion For Summary Judgment" (Document No. 45). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and immediate review is appropriate. Having carefully considered the motion, the record, oral argument, and applicable authority, the undersigned will <u>grant</u> the motion.

### I. BACKGROUND

Darlene R. Evans ("Plaintiff" or "Evans") initiated this action with the filing of a Complaint against the City of Charlotte ("City" or "Defendant") on October 14, 2014. (Document No. 1). The Complaint asserts two causes of action: (1) discrimination against Plaintiff based on her gender and age in violation of Title VII, the Age Discrimination in Employment Act ("ADEA") and 42 U.S.C. § 1983; and (2) retaliation in violation of Title VII. (Document No. 1, pp.13-16). The Complaint references Plaintiff filing charges with the U.S. Employment Opportunity Commission ("EEOC"), but does not include any Charge of Discrimination or Notice of Right to Sue. (Document No. 1). "Defendant City of Charlotte's Answer" (Document No. 7) was filed on

December 11, 2014.  The Answer attaches Plaintiff's three (3) Charges of Discrimination and three (3) Notices of Right to Sue.  (Document No. 7-1).

On December 23, 2014, the parties filed their "Certification And Report Of F.R.C.P. 26(f) Conference And Discovery Plan" (Document No. 8) and "Joint Stipulation Of Consent To Exercise Jurisdiction By A United States Magistrate Judge" (Document No. 9).  On February 3, 2015, the Court issued its "Pretrial Order And Case Management Plan" (Document No. 10).

"Defendant City Of Charlotte's Motion For Summary Judgment" (Document No. 45), "Memorandum Of Law In Support …" (Document No. 46), and multiple exhibits (Document Nos. 47 – 55) were filed on January 14, 2016.  "Plaintiff's Opposition To Defendant's Motion For Summary Judgment" (Document No. 60) was filed on February 22, 2016;  and Defendant's "Reply Brief In Support…" (Document No. 61) was filed on March 3, 2016.

On March 24, 2016, the undersigned issued an "Order" (Document No. 62) scheduling a status and motions hearing, and then on April 21, 2016, the Court heard arguments on the Defendant's pending motion.

This matter is now ripe for review and disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).  Only disputes between the parties over material facts (determined by

reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

### III. DISCUSSION

**A. Factual Background**

Defendant contends that no material facts are in dispute and that it is entitled to judgment as a matter of law. (Document No. 45, p.1). The Court will summarize the pertinent facts in the record, viewed in the light most favorable to Plaintiff.

Plaintiff Evans began employment with Defendant City of Charlotte on July 18, 2001, in the Shared Services Department. (Document No. 60, p.2). Plaintiff's job responsibilities included developing and maintaining code for computer applications used by various City departments. Id. (citing Document No. 51, pp.13, 15). Plaintiff was supervised by D. Scott Snedecor ("Snedecor") from 2004 to 2014. Id. (citing Document No. 48, ¶ 5).

3

Plaintiff received a Performance Review from Snedecor in 2011, noting that she had a "very direct approach," that occasionally "escalates into an aggressive personal confrontation . . . For example, public[ly] confronting someone in the hallway with accusations, rather than privately seeking to understand." (Document No. 51, p.43). That same review indicated that one of Plaintiff's customers had described her as "rude." (Document No. 51, pp.43-44).

In October 2012, Plaintiff received a "negative performance review," "reportedly as a result of confrontation with another Manager, Rick Young." (Document No. 1, ¶14). Plaintiff had a confrontation, in a hallway at work, with a manager named Rick Young ("Young") during February 2012. (Document No. 1, ¶ 14; Document No. 51, pp.36-38; Document No. 52-1, p.20). Snedecor noted in the 2012 performance review that "[c]onfronting a supervisor in the hallway about a personnel issue between the supervisor and his employee is unprofessional." (Document No. 52-1, p.15).

In June 2012, Plaintiff had a confrontation with a different manager, Kevin Eldreth ("Eldreth"), that was also noted in her 2012 performance review. (Document No. 52-1, p.16). Eldreth described Plaintiff's behavior as "unprofessional, angry, and hostile." Id. Another manager, Dan Heller ("Heller"), who was nearby at the time, describe Plaintiff as "screaming" during her confrontation with Eldreth. Id.

Plaintiff notes in her papers that she "was issued a 'marginal' overall rating in her Performance Development Review ("PRD"), allegedly because of two purported confrontations at the workplace." (Document No. 60, p.2); see also (Document No. 1, ¶14). In her deposition, Plaintiff further acknowledged having "a loud voice" and being "emotional and very upset" during the incident with Eldreth. (Document No. 51, p.88).

4

As a result of her "unsatisfactory" workplace behavior rating, Plaintiff was placed on a Performance Improvement Plan ("PIP") (the "2012 PIP") and was referred to the Employee Assistance Program ("EAP") for counseling. (Document No. 46, p.3 and Document No. 60, pp.2-3). Plaintiff successfully satisfied with the terms of the 2012 PIP within the thirty (30) days allotted from November 8, 2012. Id.

In December 2012, seeking a "Project Manager's certification," Plaintiff was accepted into a project management program (the "Program") through Northeastern University. (Document No. 1, ¶17; Document No. 51, p.106; Document No. 60, p.3). As part of a training exercise for a class Plaintiff was required to complete for the Program, "[s]he specifically wanted to utilize the Project Management class to further the Boards and Commissions rewrite, and would progress based upon knowledge learned in class." Id. Plaintiff testified that Snedecor approved her working on the Boards and Commissions rewrite (the "Project") as part of the Program, to further her learning. (Document No. 51, p.111). Plaintiff regarded the Project as a voluntary, "non-urgent" training exercise, for the purpose of academic credit. (Document No. 46, p.3; Document No. 60, p.3).

On February 15, 2013, Barry Robbins ("Robbins") issued a new policy, requiring all projects to have a project plan approved by the Service Area Manager. (Document No. 1, p.5). On February 27, 2013, Plaintiff and Snedecor had a mid-year performance work plan meeting. (Document No. 1, p.6; Document No. 46, p.3). On March 4, 2013, Snedecor sent Plaintiff "a mid-year performance work-plan that included the assignment 'Rewrite Boards & Commissions by 6/2013.'" (Document No. 60, p.3) (citing Document No. 52-1, p.28). On March 25, 2013, Plaintiff sent an email to Snedecor setting a timeline for the Project with a completion date of July 31, 2013. (Document No. 46, p.4; Document No. 52-1, p.30; Document No. 60, p.3). The July 31, 2013

implementation date was sent to Robbins. (Document No. 1, ¶23). Snedecor did not object to this proposed revision to the Project completion date. (Document No. 46, p.4; Document No. 60, p.3).

According to the Complaint, Plaintiff, Snedecor, and co-worker Sam Genus ("Genus") met weekly to discuss coding for Boards and Commissions, and "Snedecor continuously referred to the March document that was sent to Mr. Barry Robbins with the implementation date of July 31, 2013." (Document No. 1, ¶26). On or about June 13, 2013, Plaintiff submitted to Snedecor another proposed "completion estimation date of November, 2013" for the Project. (Document No. 1, ¶28).

On August 8, 2013, the City of Charlotte posted an opening for a Business Systems and Integrations Team Lead position. (Document No. 46, p.4; Document No. 60, p.3). Plaintiff did not apply for the position. (Document No. 46, p.4) (citing Document No. 48, p.4; Document No. 51, p.150). In fact, Snedecor testified that Plaintiff "never applied for any vacant team lead position in [his] time as her supervisor." (Document No. 48, p.4).

Plaintiff and Snedecor met on August 14, 2013 to conduct Plaintiff's annual performance review. (Document No. 46, p.4; Document No. 47, pp.1-2; Document No. 60, p.3). Human Resources Manager Tiffany C. Carew ("Carew"), also attended the meeting. Id. Snedecor rated Plaintiff "marginal" in the objective related to technical service (due to failure to complete the Project) and in the objective related to workplace behavior. Id. Snedecor presented a Performance Improvement Plan ("2013 PIP"); however, the 2013 PIP did not formally begin on the date of the meeting because Plaintiff objected, and demanded a meeting with Robbins. (Document No. 46, p.5; Document No. 47, p.3; Document No. 60, pp.3-4).

Plaintiff contends that during the meeting on August 14, 2013, she indicated she wished to apply for the Business Systems and Integrations Team Lead position, but was informed by

Snedecor that she could not apply for the position due to her "marginal" rating. (Document No. 46, p.5; Document No. 60, p.4).

On or about October 10, 2013, Nianwei Liu was promoted to the Business Systems and Integrations Team Lead position. Id. Plaintiff met with Robbins on or about October 23, 2013. (Document No. 1, ¶35).

Next, Plaintiff filed a Charge of Discrimination, No. 430-2014000144 (the "First Charge"), with the EEOC on or about October 25 or 28, 2013. (Document No. 1, ¶37; Document No. 7-1; Document No. 60, p.4). The First Charge alleged that Plaintiff had been discriminated against based on her sex and age, **on August 14, 2013**, when she was "issued a poor performance review and placed on a performance improvement plan." (Document No. 7-1).

On October 28, 2013, Plaintiff finally signed the 2013 PIP, which was scheduled for ninety (90) days. (Document No. 46, p.5; Document No. 60, p.4); see also (Document No. 47, pp.2-3; Document No. 47-1, p.9). The next day, October 29, 2013, Defendant City of Charlotte was served with Notice of Plaintiff's First Charge. (Document No. 46, p.5; Document No. 60, p.4).

Pursuant to the 2013 PIP, weekly status meetings were held between Plaintiff, Snedecor, and Carew during November and December 2013. (Document No. 46, p.5; Document No. 47, p.3; Document No. 60, p.4). During one of these meetings, Plaintiff told Snedecor "something to the effect that the meetings 'made her sick.'" (Document No. 46, p.5 and Document No. 60, p.4). (quoting Document No. 47, p.3). Carew stated in her affidavit that Plaintiff "would often display what I considered in my experience as an HR manager to be disrespectful and insubordinate behavior towards Mr. Snedecor . . . includ[ing] being excessively argumentative [and] refusing to acknowledge Mr. Snedecor's authority to place deadlines on her." (Document No. 47, p.3).

7

On January 2, 2014, sixty-seven (67) days after her 2013 PIP commenced, Plaintiff was placed on performance probation. (Document No. 46, p.6 and Document No. 60, p.5) (citing Document No. 47, p.4); see also (Document No. 47-3). Plaintiff and Snedecor signed the "Performance Probation" document on January 3, 2014. (Document No. 47-3, p.3). That document states that Plaintiff "has not satisfactorily met with the expectation of adhering to the City's Guiding Principles as it relates to dealing tactfully and respectfully with differences of opinion and treating co-workers with courtesy, patience and respect." (Document No. 47-3, p.2). It further states that "[f]ailure to demonstrate consistent and sustained performance Improvement during this Performance Probation period will result in termination." (Document No. 47-3, p.3).

On January 8, 2014, Plaintiff filed another Charge of Discrimination, No. 430-2014-00574 ("Second Charge") with the EEOC. The Second Charge suggests that Plaintiff had been discriminated against **on January 2, 2014**, in retaliation for filing the First Charge on October 28, 2013. (Document No. 1, ¶43; Document No. 7-2; Document No. 60, p.5). Defendant received a Notice of the Second Charge on or about January 9, 2014. (Document No. 46, p.6; Document No. 47-4; Document No. 60, p.5).

During January, February, and March 2014, Plaintiff, Snedecor, and Carew continued to have weekly meetings. (Document No. 46, p.6; Document No. 47, p.4). Carew stated in her affidavit that "Evans continued what I felt was much of the same troubling behavior towards Mr. Snedecor that I had observed in these meetings in November and December 2013." (Document No. 47, ¶18). Plaintiff contends that during this probationary period Snedecor instructed at least one co-worker not to assist her on the Project, which was allegedly contrary to the usual practices in the department. (Document No. 60, p.5). Apparently, eight months after her own extended deadline of July 31, 2013, Plaintiff had still not completed the Project. (Document No. 46, p.6).

On March 24, 2014, Snedecor, Robbins, and Carew held a meeting where it was determined that Plaintiff had not met the expectations detailed in her probation performance plan, and therefore, she would be recommended for termination. (Document No. 46, p.6; Document No. 47, pp.4-5; Document No. 60, p.5). That same day, Plaintiff presented FMLA paperwork, and commenced an FMLA leave of absence. Id. Plaintiff's leave included an extra five weeks of time off, in addition to the FMLA-mandated twelve weeks. (Document No. 47, ¶21). Carew believes Plaintiff was paid her normal earning rate for the entire seventeen (17) weeks of FMLA leave. Id.

Plaintiff returned to work on July 22, 2014. (Document No. 46, p.6; Document No. 47, pp.4-5; Document No. 60, p.5). On July 22, 2014, Snedecor and Carew presented Plaintiff with a pre-termination letter. (Document No. 46, p.6; Document No. 47, ¶22; Document No. 60, p.5); see also (Document No. 47-5). The pre-termination letter stated that Plaintiff had been cited for termination for "Unsatisfactory Work Performance," and that a pre-termination hearing was scheduled for July 23, 2014. (Document No. 47-5). The letter further provided that the purpose of the hearing was to review the factual basis for the proposed termination and listen to and consider any information Plaintiff may choose to present. Id. The letter noted that "[f]ailure to report to the Pre-Termination Hearing will result in immediate termination." Id.

On or about July 22, 2014, Plaintiff emailed Carew, and other HR personnel, requesting additional information about her recommended termination. (Document No. 1, ¶47; Document No. 46, p.6; Document No. 47, p.5; Document No. 60, p.5).

Plaintiff decided to "not go to the hearing set by her employer, but instead went to the EEOC to again file retaliation charges." (Document No. 1, ¶47). Charge of Discrimination No. 430-3014-01771 (the "Third Charge") was filed on July 23, 2014. Plaintiff's Third Charge alleges

that she was discriminated against **on July 22, 2014**, in retaliation for her First and Second Charges. (Document No. 7-5). Defendant received its Notice of Plaintiff's Third Charge on July 25, 2014. (Document No. 46, p.7; Document No. 47, p.5).

On July 28, 2014, Plaintiff received a more detailed explanation of the recommended termination. (Document No. 1, ¶48; Document No. 47, p.6; Document No. 60, p.6). In addition, Plaintiff's pre-termination hearing was rescheduled for July 30, 2014. (Document No. 47, p.6; Document No. 60, p.6). Robbins, Carew, and Plaintiff were present for the hearing. (Document No. 46, p.7; Document No. 47, p.6; Document No. 60, p.6). The next day, Robbins informed Carew and Snedecor that he was adopting the recommendation to terminate Darlene Evans' employment. Id. Carew prepared the formal letter of termination for Robbins' signature. (Document No. 46, p.7; Document No. 47, p.6). Plaintiff's employment with the City of Charlotte ended on July 31, 2014. (Document No. 1, ¶48). Plaintiff declined to participate in the City's Grievance Process. (Document No. 46, p.7; Document No. 47, p.6).

As noted above, Plaintiff initiated this action with the filing of her Complaint on October 14, 2014.

**B. Motion For Summary Judgment**

"Defendant City Of Charlotte's Motion For Summary Judgment" (Document No. 45) seeks "summary judgment in its favor from all the claims brought against it in the above reference action; gender discrimination under Title VII, age discrimination under the ADEA, retaliation under both Title VII and the ADEA, and 42 U.S.C. § 1983." (Document No. 45, p.1); see also (Document No. 46). In its "Reply Brief…" and during oral argument, Defendant has asserted that Plaintiff abandoned her claims for: (1) failure to promote; (2) gender and age discrimination under a

wrongful termination theory; and (3) discrimination pursuant to 42 U.S.C. §1983, by failing to brief those issues in her "…Opposition To Defendant's Motion For Summary Judgment" (Document No. 60). See (Document No. 61, p.9) (citing Estate of Weeks v. Advance Stores Co., Inc., 99 Fed. Appx. 470, 474 (4th Cir. 2004) ("a party's failure to raise an issue in a complaint or opposition to summary judgment constitutes waiver of that issue … even an issue raised in the complaint but ignored at summary judgment may be deemed waived.")). Although there appears to be merit to Defendant's abandonment argument, the Court will address all of Plaintiff's claims.

Before reviewing Plaintiff's claims, the Court notes that "[t]he scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." Tonkin v. Shadow Mgmt., Inc., 605 Fed.Appx. 194 (4th Cir. 2015) (quoting Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009)). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Id. (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996)).

### 1. Gender and Age Discrimination

Plaintiff's First Charge with the EEOC alleges discrimination on the basis of gender and age on August 14, 2013. (Document No. 7-1). Specifically, Plaintiff alleges that on that date she "was issued a poor performance review and placed on a performance improvement plan" and that she was not "able to apply for the open supervisory position of Custom Applications and Integrations Team Lead." Id. None of Plaintiff's EEOC Charges allege that she was *terminated* on the basis of her age or gender. (Document Nos. 7-1, 7-2, and 7-5). Plaintiff acknowledges that

her supervisor, Snedecor, stated that her poor review and placement on an improvement plan were due, in part or in whole, to failing to complete a project on deadline. (Document No. 7-1).

Count One of the Complaint suggests that Defendant has violated Title VII, the ADEA, and/or 42 U.S.C. § 1983 by discriminating against Plaintiff on the basis of her gender and age. (Document No. 1, pp.13-15).

A plaintiff can establish "discrimination under Title VII, 42 U.S.C. § 1981, or the ADEA through direct proof of discrimination or through the application of the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green." Jones v. Constellation Energy Projects & Services Group, Inc., 2015 WL 6389167, *1 (4th Cir. 2015); (quoting Foster v. Univ. of Md.-Eastern Shore, 787 F.3d 243, 249 (4th Cir. 2015)).

> To advance a discrimination claim beyond the summary judgment stage under McDonnell Douglas, a plaintiff must put forth a prima facie case by showing that (1) "he belongs to a protected class;" (2) "he suffered an adverse employment action;" (3) "at the time of the adverse action, he was performing his job at a level that met employer's legitimate expectations;" and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination.

Id. (quoting Adams v. Trs. of the Univ. of N.C.–Wilmington, 640 F.3d 550, 558 (4th Cir. 2011).

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Jones, 2015 WL 6389167, at *2 (quoting Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011)). Standing alone, neither a poor performance review nor a performance improvement plan constitutes an adverse employment action. Pulley v. KPMG Consulting, Inc., 348 F.Supp.2d 388, 394-95 (D.Md. 2004), aff'd 183 Fed.Appx. 387 (4th Cir. 2006).

If a plaintiff succeeds in making "a *prima facie* case of discrimination by a preponderance of the evidence," then "the defendant-employer has the opportunity to present a legitimate, non-discriminatory reason for its employment action." Evans v. Techs. App. & Service Co., 80 F.3d 954, 959 (4th Cir. 1996).

> If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case "drops out of the picture" and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. . . . The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her."

Id. (citations omitted).

To the extent Plaintiff alleges a failure to promote, she "must forecast evidence that '(1) she is a member of protected group, (2) there was a specific position for which she applied, (3) she was qualified for that position, and (4) [the City] rejected her application under circumstances that give rise to an inference of discrimination.'" (Document No. 46, p.8) (quoting Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004)).

Defendant does not dispute that Plaintiff is a member of a protected class or group. (Document No. 45, p.8). However, Defendant argues that Plaintiff did not apply for the open position, was not qualified for the position, and that there are no circumstances that give rise to an inference of discrimination. Id. Moreover, Defendant notes that Plaintiff has failed to forecast any evidence related to the final three prongs that might establish a *prima facie* case. Id.

First, Defendant argues that Plaintiff freely admits that she knew of the opening for a Business Systems and Integrations Team Lead, had access to the application, and could have filled it out. (Document No. 46, p.9) (citing Document No. 51, pp.150, 216). Defendant further argues that even assuming Snedecor told Plaintiff she could not apply, by her own admission that was

because of her marginal performance review and not for any discriminatory reason. Id. (citing Document No. 51, p.209). See also, Evans v. Techs. App. & Service Co., 80 F.3d 954, 959 (4th Cir. 1996) ("alleged comment by [supervisor] that he would not allow her to become a supervisor . . . not discriminatory on its face, as it could have been made in reference to any male or female employees seeking promotion."). Defendant also asserts that without any forecast of evidence, Plaintiff only speculates that she would have applied for the open position, but for her performance review meeting with Snedecor. (Document No. 46, p.10). Defendant notes that "unsupported speculation… is insufficient to defeat a motion for summary judgment." Id. (quoting Evans, 80 F.3d at 960).

Next, Defendant argues that even if Plaintiff had applied for the promotion, she has not forecast that she was qualified for it. Id. Moreover, Plaintiff has not forecast evidence that the circumstances of her alleged disqualification on the basis of her performance evaluation give rise to an inference of discrimination. Id.

Even if Plaintiff had established a *prima facie* case of discrimination based on her gender or age, the undersigned agrees with Defendant's argument that her claims would not survive the burden-shifting analysis. (Document No. 46, pp.11-12). The record, including affidavits and deposition testimony, appear to more than adequately support Defendant's contention that it had non-discriminatory reasons for not promoting Plaintiff. Namely, Snedecor has testified that Nianwei Liu ("Liu"), a male in his early or mid 40s, was more qualified. Id. Specifically, Liu had "demonstrated superior technical skills and innovation and initiative in the department." Id. (quoting Document No. 53, pp.78-79).

Defendant's non-discriminatory reasons for Liu's selection are compelling. Moreover, it does not appear that Plaintiff has forecast evidence that undermines the credibility of Defendant's

statements, or even suggests that she was better qualified for the open position. See (Document No. 46, p.12) (citing Hux v. City of Newport News, Va., 451 F.3d 311, 315 (4th Cir. 2006)). To the contrary, there is substantial evidence that Plaintiff had not been performing her job at a level that met her employer's reasonable expectations.

For a § 1983 claim, Plaintiff must forecast evidence that action pursuant to an official municipal policy caused her injury. See Monell v. Dep't of Soc. Servs., 436 U.S 658 (1978) and Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011). Municipal liability cannot be predicated upon the doctrine of *respondeat superior*. Id. Again, Plaintiff has failed to forecast sufficient evidence, or made any persuasive argument, that Defendant acted pursuant to an official municipal policy and caused her injury.

**2. Retaliation**

Plaintiff's Second and Third Charges to the EEOC, and Count Two of her Complaint, allege that she has been discriminated against in retaliation for her prior Charge(s). (Document No. 7-2; Document No. 7-5). Specifically, the Second Charge alleges that Plaintiff was retaliated against **on January 2, 2014**, when her 2013 PIP time frame was shortened and she was placed on probation due to her First Charge filed on October 28, 2013. (Document No. 7-2). The Third Charge alleges that Plaintiff was discriminated against **on July 22, 2014**, when she received a pre-termination letter, due to her First and Second Charges. (Document No. 7-5). Although the Complaint states retaliation on the "basis of sex and age," the Second and Third Charges with the EEOC do not include allegations that Plaintiff was retaliated against based on her sex or age. (Document No. 1, pp.15-16; Document Nos. 7-2 and 7-5).

For a retaliation claim "under the modified McDonnell Douglas framework, a plaintiff must show (1) [s]he engaged in a protected activity, (2) h[er] employer took an adverse action, and

15

(3) there was a causal connection between the two." Jones, 2015 WL 6389167 at *4 (citing Foster, 787 F.3d at 250). As discussed above, if Plaintiff establishes a *prima facie* case, the burden shifts to the City to give a legitimate, non-discriminatory reason for its decision. Once the City does so, the burden shifts back to Plaintiff to show that the City's proffered explanation is a pretext for intentional discrimination. Hux, 451 F.3d at 314-15.

It is undisputed that Plaintiff satisfies the first prong. (Document No. 46, p.20). Based on the authority and evidence discussed above, Plaintiff has failed to establish that being placed on a PIP, having a PIP time frame shortened, or being placed on performance probation are adverse employment actions; however, it is undisputed that the termination alleged in the Third Charge, and in Count Two of the Complaint, in retaliation for Plaintiff's EEOC Charge(s), is an adverse action. (Document No. 46, p.21).

Defendant argues that Plaintiff has not met the third prong by showing a causal connection between the protected activity and the adverse employment action. Id. Defendant notes that "each time the City took a disciplinary action against Plaintiff, she followed it by filing an EEOC claim – not the other way around." Id. Each of Plaintiff's Charges describes discrimination on a particular date, and those dates are when she was: (1) "placed on a performance improvement plan" (August 14, 2013); (2) "placed on performance probation" (January 2, 2014); and (3) "informed by letter I was terminated due to unsatisfactory performance" (July 22, 2014). See (Document Nos. 7-1, 7-2, and 7-5).

Defendant further argues that *even if* Plaintiff could establish a *prima facie* claim for retaliation, Defendant would still be entitled to summary judgment when the rest of the McDonnell-Douglas framework is applied. Id. Again, Defendant here presents a compelling argument supported by affidavits, deposition testimony, and other evidence including Plaintiff's

PIPs, that the City of Charlotte had legitimate, non-discriminatory reasons for any "adverse" actions it allegedly took, up to and including Plaintiff's termination. Id. See also (Document Nos. 47-55).

This evidence indicates that Defendant followed normal procedures in attempting to address and improve perceived problems with Plaintiff's workplace behavior and production over a period of years. Nevertheless, the evidence shows that Plaintiff's supervisor, other managers, and Human Resources representatives ultimately determined that Plaintiff's workplace behavior and performance were not improving or meeting expectations. In fact, Plaintiff's own Charges indicate a process of review, attempts at improvement via PIPs, probation, and then eventually termination. (Document Nos. 7-1, 7-2, and 7-5).

In response to this evidence, and the pending motion, Plaintiff has completely failed to show that Defendant's explanations are actually a pretext for discrimination. (Document No. 60). At best, Plaintiff offers a one-sentence conclusory rebuttal asserting that she "was a stronger performer than similarly situated younger, male colleagues," and/or that the allegedly "adverse employment actions were suspicious, unusual, *and* unprecedented." (Document No. 60, p.13). Plaintiff's conclusion lacks citation to any evidence or persuasive authority supporting her position. Id.

The Court has carefully considered the parties' filings, as well as their counsel's more than capable oral arguments at the hearing on April 21, 2016. Even viewing the evidence in the light most favorable to Plaintiff, the undersigned is convinced that Plaintiff has failed to set forth specific facts indicating that there are any genuine issues for trial, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant City Of Charlotte's Motion For Summary Judgment" (Document No. 45) is **GRANTED**.

**SO ORDERED**.

Signed: May 6, 2016

David C. Keesler
United States Magistrate Judge